IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SPIRIT COMMERCIAL AUTO RISK
RETENTION GROUP,

        Plaintiff,

     vs.                                          Case No. 1:17-cv-00842 WJ/SCY

GNB TRUCKING, INC., ERIC HEIN,
WENDY HEIN, and LEE HUNT as Personal
Representative of the Estate of RILEY HEIN,

        Defendants.

**MEMORANDUM OPINION AND ORDER
DISMISSING CASE WITHOUT PREJUDICE
BASED ON *BRILLHART* ABSTENTION DOCTRINE**

THIS MATTER comes before the Court upon a Motion to Dismiss Complaint for Declaratory Judgment Pursuant to the *Brillhart* Abstention Doctrine or, Alternatively to Stay While Underlying State Action is Proceeding, filed on September 29, 2017 by Defendants Eric Hein, Wendy Hein, and Lee Hunt as personal representative of the Estate of Riley Hein (collectively, the "Heins") **(Doc. 4)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is granted in that this case shall be dismissed without prejudice.

**BACKGROUND**

This is an insurance coverage dispute. In November 2015, GNB Trucking, Inc. ("GNB Trucking" or "GNB") was hired by a property broker, Choptank Transport, Inc., to transport a load of frozen bread from Muncie, Indiana to Compton, California with a drop-off date of November 14, 2015. Despite being hired as the carrier, GNB did not transport the load itself, but

instead hired Barkandhi Express, Inc., a motor carrier alleged to be unsafe, pursuant to a "sub hauler" contract that had been executed in October 2015. While traveling through New Mexico, the Barkandhi truck hired by GNB collided with a car driven by the Heins' 16 year-old son Riley, causing his death. The Barkandhi Express semi-truck involved in the crash is not listed on GNB Trucking's insurance policy issued by Spirit. In this federal action, Spirit seeks a declaration that it owes no duty to GNB Trucking, the Heins or any other person or entity for claims arising out of the underlying action.

An underlying wrongful death case is currently proceeding in state court. The state action was filed in the First Judicial District, County of Santa Fe on November 18, 2016. As plaintiffs in that action, the Heins sued GNB Trucking and the New Mexico Department of Transportation in a wrongful death action. *See Hein et al. v. The New Mexico Dep't of Transportation, et al.,* No. D-101-CV-2016-01541; *see* Doc. 1-1 (Am. Compl.) & Doc. 10-1 (Sec. Am. Compl.).

## DISCUSSION

The Heins filed the instant motion seeking a dismissal—or in the alternative, a stay—of these federal proceedings. They claim that the controversy regarding coverage should be heard in the pending state case under New Mexico's Declaratory Judgment Act because nothing can be decided in this federal lawsuit until the issues in the underlying state case are decided. *See* Doc. 4, n.1).[1] Plaintiff, the insurer in this case, contends that this coverage action involves different issues than those that are in the underlying state court wrongful death suit and so the request to dismiss or stay this federal action should be denied.

---

[1] Under New Mexico law, collateral actions for declaratory judgment on an insurer's duty to defend are not allowed. A party wishing to exercise its rights under the state's declaratory judgment statute, NMSA §44-6-2, must file its action in the appropriate state proceeding that is already proceeding. *See Lopez v. New Mexico Public Sch. Ins. Authority,* 1994-NMSC-017, §11, 870 P.2d 745.

**I.  Relevant Law**

The Declaratory Judgment Act vests federal courts with power and competence to issue a declaration of rights. 28 U.S.C. § 2201. While this statute vests the federal courts with power and competence to issue a declaration of rights, *see Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, (1962) (per curiam), the question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts. *St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995). In *Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942), the United States Supreme Court made it clear that district courts are "under no compulsion to exercise . . . jurisdiction" under the Declaratory Judgment Act, noting that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 494. Instead, the district court should determine whether the lawsuit "can better be settled in the proceeding pending in the state court." *Id.* This question involves a consideration of whether the matters being heard in the state court action are essential to a determination of the collateral federal action, or whether the issue being raised in the federal declaratory action involves no matter—factual or legal—at issue in the state case. In other words, this Court must consider whether the questions in controversy between the parties to this federal lawsuit "can better be settled in the proceeding pending in the state court." *Brillhart,* 316 U.S. at 494; *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) (framing question as "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state court] proceeding") (quoting *Brillhart*, 316 U.S. at 495).

In deciding whether or not to hear a declaratory judgment action, a court considers various factors, including these:

(1) whether a declaratory action would settle the controversy;
(2) whether it would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata";
(4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
(5) whether there is an alternative remedy which is better or more effective.

*St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (citing *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994)).

## II. Facts Relating to Policy at Issue

The Heins claim that this federal action should be dismissed or at least stayed because nothing can be decided in this separate federal lawsuit until the underlying issues in the state case are decided. They acknowledge that the Barkandhi Express semi-truck that was involved in the November 13, 2015 crash was not listed on the policy issued to GNB Trucking by Spirit, but contend that the truck may still be insured under the following section of the policy:

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**
If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability Coverage:
1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.
2. "Mobile equipment" while being carried or towed by a covered "auto".
3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. "Loss"; or
   e. Destruction.

Ex. 1, Spirit Policy, Motor Carrier Coverage Form, p. 3.

The Heins contend that whether or not this policy applies to their claims against GNB Trucking depends on a factual determination about the reasons GNB hired another motor carrier to transport the load of goods in its place. The Heins also characterize the claims against GNB as arising from the use of motor vehicles subject to the financial responsibility requirements of

4

Sections 29 and 30 of the Motor Carrier Act of 1980, and for this reason they argue that the claims may be covered under an endorsement in the policy which applies to:

> public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

Ex. 1, SIC policy, MCS-90 endorsement, p. 2 ("Form MCS-90"). The Heins note that GNB Trucking has failed to respond to written discovery requests seeking information about the reasons it hired another motor carrier in the first place. *See* Exs. 3, 4, & 5.

## III. Analysis of *Mhoon* Factors

The Heins argue that the *Mhoon* factors weigh in favor of dismissal or at least a stay of the federal action. Plaintiff gives barely a passing nod to those factors, choosing instead to narrow the sole question to whether or not the same coverage dispute is before the state court, and arguing that the Court should deny dismissal when the coverage claims are presented only in the federal action. However, there is no case law supporting Plaintiff's suggestion that such an approach is sufficient. Plaintiff relies on several unpublished cases which did not actually adopt the very narrow analysis Plaintiff urges this Court to espouse here, but instead embarked on an analysis of the *Mhoon* factors. *See* Doc. 8 at 7-8 & n.2. While there is no requirement to follow a formulaic approach in discussing the *Mhoon* factors, there should be some adherence to its framework. The *Mhoon* factors can be conveniently grouped into a consideration of (a) the first and second factors; (b) the third factor; and (c) the fourth and fifth factors.

### A. First and Second *Mhoon* Factors.

The first two factors are (1) whether a declaratory action would settle the controversy; and (2) whether it would serve a useful purpose in clarifying the legal relations at issue.

5

Spirit, the insurer and Plaintiff in this federal action, argues that there is no coverage dispute in the underlying state action because the complaint in that venue alleges claims of negligent and intentional acts against GNB Trucking, the named insured under a policy issued by Spirit. Plaintiff also maintains that none of the facts at issue in the state court action are necessary to the resolution of the underlying tort suit.

The Heins assert that a key issue in the underlying case is GNB's decision to hire another motor carrier instead of transporting the load itself. *See* Ex. 1 (Sec. Am. Compl., ¶¶54-57). They contend that the reason GNB hired Barkandhi Express is highly relevant to several issues, including whether GNB Trucking breached its duty to the traveling public as a motor carrier and its violation of federal law in acting as a broker without a license; as well as the issue of motive—which in turn may be key to determining whether GNB's conduct meets the threshold for punitive damages. For example, if GNB hired Barkandhi Express as a "temporary substitute" for a vehicle covered under GNB's policy issued by Spirit, then the policy will afford coverage as a matter of law. *See* Doc. 4-2, p. 3 (provision on coverage for "Temporary Substitute Autos"). The Heins contend that the coverage issue under the "temporary substitute autos" provision must be determined before the Court can proceed to the next question: whether the Form MCS-90 endorsement provision applies, since it applies only if GNB is not covered by the temporary replacement provision. They argue that the facts underlying these issues are already being explored as part of the state court proceeding, although still in the discovery stages.

Plaintiff likens this case to the *Mhoon* case, where the court declined to stay the federal declaratory action while the state court case continued. This Court, however, finds that *Mhoon* is more of a contrast to the instant case than a comparison. *Mhoon* arose out of a dispute between neighbors which resulted in Mr. Mhoon shooting Mr. Fujiwara. Mhoon was convicted of

aggravated battery in a criminal proceeding, and while that action was pending Fujiwara and his wife sued Mhoon in a civil action in state court. Mhoon was covered under a State Farm homeowner's policy only for accidental, not intentional harms that he might commit. 31 F.3d at 982. Ruling in favor of the insurer on the insurer's summary judgment motion, the federal district court easily found that there was no triable issue with respect to whether Mhoon's conduct could be termed accidental under the policy: while the complaint alleged that Mhoon's actions were accidental, the court found that it offered "no *facts* whatsoever that suggest this was the case." *Id.* at 984-985. Other evidence, including Mhoon's own testimony, precluded any serious suggestion that he accidentally shot his neighbor and the court further noted that the issue had also been resolved by the application of collateral estoppel in the criminal case.

The court in *Mhoon* found that addressing these issues involved no "undue interference" with the state proceeding because there was no material dispute that needed to be settled on either the duty to defend or the coverage issue:

> The duty to defend issue, as will be explained below, involved only an examination of the state court complaint to see if its allegations of fact triggered the duty. Determining that duty involved no matter, factual or legal, at issue in the state case. Nor was the coverage issue, under the trial court's approach, a complicated one: it involved only a search of the relevant record to ascertain whether there was any triable issue with respect to whether Mhoon's conduct could be termed accidental under the terms of the homeowner policy. Any ambiguities, moreover, had to be resolved in appellant's favor. It is very doubtful that this approach and the summary judgment threatened any substantial interference in the state court proceedings.

*Mhoon*, 31 F.3d at 984. Plaintiff in this case ignores that there are factual matters relating to key issues for coverage that are being developed in the state court, whereas in *Mhoon*, the state court was not expected to make any further findings that were necessary to resolve the coverage issue.

The facts in the *Runyon* case are in stark contrast to those in *Mhoon*. In *Runyon*, the Tenth Circuit affirmed the district court's decision to decline the exercise of jurisdiction,

7

applying the *Mhoon* factors. 53 F.3d 1167. Runyon, a nurse anesthetist, was sued by two coworkers who alleged, inter alia, that Runyon abused patients and withheld medically necessary services to patients because they either lacked insurance or because of their race. Runyon's malpractice carrier declined to provide a defense, asserting that the coworkers' lawsuit did not implicate professional liability coverage, and when the insurer filed a declaratory judgment action in federal court, Runyon filed a bad faith and breach of contract suit against the carrier in state court the following day. The Tenth Circuit observed that the core question in both cases was the same—whether the insured was protected from liability in a separate court action under his insurance contract, and agreed with the district court that both the insured and the insurer were parties to the pending state contract action, and that the federal action involved the identical issue. 53 F.3d at 1169.

Plaintiff characterizes *Runyon* as distinguishable from this case because disputes over coverage were at issue in both the state and federal lawsuit in *Runyon,* where in the instant case disputes over coverage are presented only in the federal action. However, while Spirit is not a party in the underlying state action and coverage is not an asserted or prominent claim in the underlying case, nevertheless fact-dependent issues relating to coverage will most likely be decided in the pending state court proceeding. *See Kunkel v. Cont'l Cas. Co.,* 866 F.2d 1269, 1276 (10th Cir. 1989) ("a district court 'should not entertain a declaratory judgment action over which it has jurisdiction if the fact-dependent issues are likely to be decided in another pending proceeding'").

One of the unpublished cases relied on by Plaintiff was before the undersigned where the Court denied a motion to abstain from exercising jurisdiction over the federal declaratory action. In that case, *Those Certain Underwriters at Lloyd's London Subscribing Policy No.*

*C111271/054 v. New Mexico Psychiatric Servs. Corp.*, plaintiff Shaw filed a complaint in state court against New Mexico Psychiatric Services ("NMPS"), the Board of Commissioners of Chaves County, New Mexico and several individual defendants, alleging counts of negligence and loss of consortium relating to the death of her husband while he was jailed at the county's detention center. NMPS was under contract to provide medical care at that facility. No. CV 14-00178 WJ/CG, 2015 WL 11622957, at *3 (D.N.M. Feb. 11, 2015). NMPS' insurer sought a declaration in federal court of the rights and obligations of the parties under the policy with respect to the state court lawsuit instituted by the deceased's wife. The county was not an additional named insured under the policy, nor was the insurer a party to any relevant agreement between NMPS and the county. This Court engaged in an analysis under the *Mhoon* factors and concluded that the issue of coverage and the insurer's obligations to NMPS and/or the county in the federal lawsuit would not have any impact on the dispute between plaintiff and the county in the underlying state court action. *Id.* at *2. The parties could obtain complete relief in the federal action despite the absence of Chaves County as a party and so the federal action could proceed without encroaching on the state court's jurisdiction to resolve the underlying issues.

The Court's conclusion in *Those Certain Underwriters* was based on a consideration of the *Mhoon* factors, and in that case there was a very real disconnect between the coverage issue in the federal action and the tort action in the state court case. The circumstances are not the same in the instant case, where facts relating to coverage will necessarily be developed and addressed in the state court litigation as the case proceeds. It would make little sense in terms of both efficiency and comity to adjudicate those same factual issues here.

The first two *Mhoon* factors weigh strongly in favor of abstention.

    B.    <u>Third *Mhoon* Factor: Procedural Fencing</u>

9

The third factor concerns whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or to "provide an arena for a race to res judicata."

The Heins point out that Spirit filed this declaratory action nine months after the state court claims were brought against GNB, and only after a mediation that failed to resolve the case. *Cmp. Runyon,* 53 F.3d at 1170 (affirming finding of procedural fencing by district court where insurer filed its federal suit one day before the date the insured promised to file his state court contract action against insurer). Also, Spirit is not a party to the state court action even though it has participated in mediation and has tendered a defense on behalf of GNB Trucking and while Spirit could have intervened to resolve the coverage issue in the state court case, it chose not to do so.

Plaintiff offers no counter to the Heins' arguments on this factor. The *Mhoon* court based its decision to retain the case in part on the fact that neither party had suggested the insurer "was, or could have been made, a party to the state tort action, thus obviating any need for an independent declaratory action and providing a simpler and more efficient resolution of [the insurer's] obligations toward Mhoon." *Id.* at 984. Here, there is no dispute that Spirit can be made a party to the state tort action—which would also obviate any need for an independent declaratory action and providing a more streamlined resolution of Spirit's obligations toward GNB, its insured, as well as the Heins. *See Addison Ins. Co. v. Rippy*, 2009 WL 723322, at *7 (D. Colo. Mar. 18, 2009) ("The discussion that tends to dominate the analysis of the fifth *Mhoon* factor focuses on whether the parties could adjudicate the issue in the underlying action.") (citing *U.S. v. City of Las Cruces,* 289 F.3d 1170, 1188–89 (10th Cir.2002) and *Mhoon,* 31 F.3d at 984).

Without any responsive argument from Plaintiff on the procedural fencing question, this third factor weighs in favor of a finding that Spirit filed this action because it viewed federal

court as a more favorable forum and thus is using this action for procedural fencing. *See St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (district court may choose to avoid a declaratory judgment action because the plaintiff is using the action for procedural fencing).

  C.  Fourth and Fifth *Mhoon* Factors

The final factors in the analysis consider whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and whether there is an alternative remedy which is better or more effective.

The Heins contend that the appropriate forum for factual questions underlying coverage is the underlying state case. *See Lopez v. New Mexico Pub. Sch. Ins. Auth.*, 1994-NMSC-017, ¶ 11, 117 N.M. 207, 210, 870 P.2d 745, 748 ("Generally, a determination of whether an exclusion relieves an insurer from a duty to defend must be made in the primary lawsuit, and not in an action for declaratory judgment, because it is a factual question."). The Court agrees and finds that addressing these facts here as well would encroach on state jurisdiction. While the state court claims are premised on a wrongful death action, inevitably the state court case will open up an investigation into certain facts relating to the reasons behind GNB's decision to hire out another motor carrier to transport the load of goods in its place, and that findings will be made based on the investigation of that issue.

Because the state court case will be addressing these matters, the state court provides a forum that is at least equivalent to that offered by allowing the action to proceed in federal court. Moreover, this Court considers the state court forum to be efficient at this point since discovery is already underway there. The state court action (particularly with joinder of Spirit pursuant New Mexico's Declaratory Judgment Act) would decide the rights of all interested parties and

11

would therefore be more comprehensive and efficient. *See Ortiz v. Biscanin*, 190 F. Supp. 2d 1237, 1247 (D. Kan. 2002) (noting that the state declaratory judgment act empowers courts to determine the rights and liabilities of the parties in litigation at bar). Plaintiff provides no reason for this Court to find that the New Mexico state court would provide "less complete relief than that which is available in federal court." *Id.* at 1247 (concluding that proceeding with federal declaratory action would be improper under Tenth Circuit standards).

Plaintiff offers no specific response as to these last two factors. Instead, Spirit points out that the federal action will be governed by different substantive law than the underlying lawsuit: the claims in the underlying tort suit between the Heins and GNB will be controlled by New Mexico substantive law (location of the accident) but the coverage issues in the federal action will be governed by contract law. *See* Doc. 8 at 3-4.[2] However, this argument is not a valid reason to proceed with the federal action. As the Heins observe, a New Mexico state court has the authority to interpret a contract by applying another state's law—just as a New Mexico federal court does. *See Nez v. Forney*, 1989-NMSC-074, 109 N.M. 161, 783 P.2d 471 (court may apply forum state's statute of limitations even if another state's substantive law is to be applied); *Burge v. Mid-Continent Cas. Co.*, 1997-NMSC-009, 123 N.M. 1, 933 P.2d 210 (choice of law provision in an automobile policy called for application for Oklahoma law by New Mexico state court with respect to substantive issues).

The final *Mhoon* factors favor abstention. Resolution of fact-dependent issues in state court will also determine the coverage issues that are before the court here. Comity and efficiency both require that the federal court not get in the way of the New Mexico state court in examining those issues and resolving those facts.

---

[2] Defendant GNB Trucking is a California corporation with its principal place of business in California, and Plaintiffs suggest that California law will apply rather than New Mexico law. Doc. 8 at 4.

D. <u>Whether Dismissal or a Stay is Appropriate</u>

The last question is whether dismissal or a stay of the federal action is appropriate in these circumstances. As mentioned previously, while pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction, neither is the federal court obliged to proceed with a case where the controversy may be resolved more expeditiously in the state court. *State Farm Mut. Auto. Ins. Co. v. Scholes*, 601 F.2d 1151, 1154 (10th Cir. 1979) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). The United States Supreme Court has also voiced strong support for a district court's discretion to defer proceedings because of concurrent state litigation:

> No one can seriously contend that a busy federal trial judge, confronted both with competing demands on his time from matters properly within his jurisdiction and with inevitable scheduling difficulties because of the unavailability of lawyers, parties, and witnesses, is not entrusted with a wide latitude in setting his own calendar.

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665 (1978) (Opinion of Rehnquist, J.) (citing *Scholes,* 601 F.2d at 1155. In *Scholes,* the Tenth Circuit found the opinion by the Utah district court to be instructive:

> Wise judicial administration militates against State Farm's contention that both this action and the state court action should proceed simultaneously. Simultaneous prosecution of both causes would result in wasteful duplication of efforts of counsel, courts, litigants, and witnesses. Moreover, the state court obtained jurisdiction long before this court. No issue of federal law or policy is involved. A final judgment in state court will necessarily resolve all issues before this court and the other issues arising out of the same transactions thus allowing comprehensive disposition of litigation.

*Scholes*, 601 F.2d at 1155 (denying a writ of mandamus where insurer's federal declaratory action was dismissed and finding that insurer's right to have its action heard because of the pendency of a state court proceeding was not clear and indisputable. *State Farm Mut. Auto. Ins.*

*Co. v. Scholes*, 601 F.2d 1151 (10th Cir. 1979). In *Scholes,* the Tenth Circuit also considered other factors such as:

> . . . comity, the extent of disputed factual (as opposed to legal) issues involved, adequacy of relief available in statute court, avoidance of maneuvers designed to throw sand into judicial machinery, the order in which the courts obtained jurisdiction, the need for comprehensive disposition of litigation, and the desirability of avoiding piecemeal litigation.

*Scholes*, 601 F.2d at 1155. All of these considerations are pertinent here as well, and there would be no good reason to stay the case instead of dismissing it. All of the factual issues relating to coverage can be addressed and resolved in the state court proceeding.

In sum, the Court agrees with the Heins that there can be no resolution of the current action until the factual question of why GNB hired Barkandhi has been answered, and that this and other factual resolutions being addressed in state court are relevant to the issue of coverage. There is no reason for this Court to take over an inquiry into factual issues that is already underway in the pending state court proceeding and thus, no reason for this federal action to continue.

**THEREFORE, IT IS ORDERED** that the Heins' Motion to Dismiss Complaint for Declaratory Judgment Pursuant to the *Brillhart* Abstention Doctrine or, Alternatively to Stay While Underlying State Action is Proceeding **(Doc. 4)**, is hereby GRANTED and that this case is DISMISSED WITHOUT PREJUDICE for the reasons stated in this Memorandum Opinion and Order.

A Rule 58 Judgment shall issue separately.

_____
UNITED STATES DISTRICT JUDGE